HENRY v. ANN ARBOR RAILROAD CO.

RAILROADS—REMOVAL OF TRACKS—INJUNCTION—SUITS BY PRIVATE INDIVIDUALS.

The fact that private individuals, resident and owning property in a given city, contributed money towards the building and equipping of a line of railroad through such city, upon the representation and understanding that the road would increase the value of their property, does not give them the right to maintain a bill in equity to restrain the company from taking up or discontinuing the use of its track through the city, at least where the injury resulting from such action is not specific to them or their property, but is common to all citizens and property holders of the city; the remedy being by suit in the name of the proper officer of the State.

Appeal from Gratiot; Person, J., presiding. Submitted February 2, 1898. Decided March 15, 1898. Rehearing denied June 28, 1898.

Bill by James Henry, Lemuel Saviers, George H. Scriver, Archibald B. Darragh, and Parker Merrill, residents and property owners in the city of St. Louis, to enjoin the Ann Arbor Railroad Company from discontinuing its line of road through said city. From a decree dismissing the bill, complainants appeal. Affirmed.

*E. A. Cooley* and *Fatio Colt* (*Benton Hanchett* and *C. W. Giddings*, of counsel), for complainants.

*Alexander L. Smith*, for defendant.

LONG, J.   The bill in this cause is filed by the above-named complainants for the purpose of restraining the defendant, by injunction, from making any change in the operation of its road in and through the city of St. Louis, this State, and from diverting any portion of its traffic, either freight or passenger, from the line now passing through and by said city; from taking up or discontinuing the use of the tracks, or any portion thereof, now operated and used by it to and from that city; and from in any way violating or departing from a certain agreement made by the Toledo, Ann Arbor & North Michigan Railway Company with complainants and other citizens of St. Louis, of which railway company the defendant is the successor.   It is also claimed by the bill that no proceedings under the statute have been taken by the defendant to obtain the right to abandon or take up or cease operating the tracks now extending into and through the said city.

The contract which the complainants contend the defendant is violating is substantially that in 1883 the Toledo, Ann Arbor & North Michigan Railway Company proposed building a railroad from South Lyon to Frankfort, and also to Alpena, in this State, constructing a line from South Lyon to St. Louis, via Owosso, and from St. Louis diverging lines, one running to Frankfort and one to Alpena; that said company made a map showing the direction and route of its proposed lines, and thereupon solicited aid and assistance to build and equip said lines of road from the citizens and property owners of said city, and, in furtherance thereof, proposed to build a road which would become a great trunk line, handling and carrying a large amount of business, that would be of great value to the residents and property owners of St. Louis, and would greatly increase the value of property;

that the complainants and other citizens of St. Louis and vicinity, relying upon these representations, contributed upwards of $20,000 to said company, and gave it the right of way through St. Louis. The bill alleges that the road was completed, and freight and passenger depots built within the corporate limits of that city; that property interests have advanced by the operation of said road; that the relative value of property in different parts of the city has been changed by the construction and operation of the road; that certain property advantageously located with reference to the use of facilities afforded by said road has been largely increased in value; that, to a certain extent, the places selected by residents of the city for the construction of business buildings and residences have been affected and determined by the location of said road; and that in other respects the property interests of the complainants and other property owners have been affected by the building of the road; and that to now change the method of operating and using the road would cause great and irreparable injury to the complainants and others of the said citizens and property holders contributing to the aid of said road. The bill sets out that complainant Henry contributed $1,600, Merrill $50, Saviers $500, Darragh $500, and Scriver $600, to aid in building the road. It is quite unnecessary to set out the various changes made in the corporation subsequent to the building of the road. It is claimed by the bill that the bondholders of the Toledo, Ann Arbor & North Michigan Railway Company sold the road under its mortgage bonds, and that the defendant company subsequently became the owner of the rights and franchises of the original road, and now operates it, and that it threatens to take up its tracks, change the location of its main line, and leave the city of St. Louis without the rights and privileges which it had enjoyed, and which it was represented, when the aid was given, that it would have.

The defendant answered the bill, and admitted that it expected and intended to change its main line, and

discontinue its through line to St. Louis; that this is to be done to straighten its line, and avoid a dangerous curve and steep grade, which make it impossible to operate successfully heavy trains over its line as now located.   From the view we take of the case, it is unnecessary to set out all the defenses interposed by the answer.   It is averred, however, that the complainants are not entitled to the relief asked by the bill, and the benefit of a demurrer is prayed. The cause was heard in open court, and the bill dismissed.

We need consider but one question, as, under defendant's contention, that must dispose of the case upon this record.   The action is not brought to recover the bonuses, but to compel the defendant to continue to perform duties claimed to be imposed upon it by the statutes.   It is true that the bill alleges that complainants are property owners in the city of St. Louis, and that they, as well as other residents of that city, will suffer great and irreparable injury by the proposed change.   The injury, however, is not specific to them or their property, but common to all citizens and property holders of that city.   As well claimed by counsel for defendant, such suit must be brought in the name or by authority of the State, through some public officer properly authorized, and cannot be maintained by private individuals.   Section 3304, 1 How. Stat., provides for the bringing of such suits by the proper officers of the State; section 3306 saves the rights of private parties to bring suits against railroad companies for private damages; and sections 8148, 8149, 2 How. Stat., give to courts of equity, in suits brought under the direction of the attorney general, power to grant injunctions to restrain any corporation from transacting any business not authorized by the charter of such corporation.

In *Kinealy* v. *Railway Co.*, 69 Mo. 658, the question came before that court whether a private citizen might recover damages from a railroad company, sustained in the depreciation of his property by such company's discontinuing its old route for the passage of its through trains, and its construction of a new route for that pur-

pose. It was held not competent for the citizen to raise the question that such acts of the company were in violation of its charter, as such question could be·raised only by the State. It was said by the court:

"Whether the defendant acted in violation of its charter when constructing its new, and withdrawing its trains from its old, route, past Jennings' Station, is a question we do not propose to discuss, as it is a question which can only be raised by the State, except where such collateral inquiry by a private citizen is expressly granted by law. But, disregarding any consideration of this nature, plaintiffs' standing in court is not thereby bettered; for they do not allege that the injury complained of is one special and peculiar to the party complaining,—an injury not shared by the other members of the community. For aught that appears in the petition, every lot owner in Jennings' Station, every owner of real estate in the vicinity, is as much damaged as is the wife of plaintiff by the withdrawal of defendant's trains, and the consequent depreciation in the value of real estate. It is well settled that, where a highway is altered, obstructed, or altogether vacated, no action will lie except by him who 'has greater trust or incommodity than every other man has,'"—citing *Holman* v. *Inhabitants of Townsend*, 13 Metc. (Mass.) 297; *Stetson* v. *Faxon*, 19 Pick. 147 (31 Am. Dec. 123); *Brainard* v. *Railroad Co.*, 48 Vt. 107.

In *People, ex rel. Bristol*, v. *Supervisors of Ingham Co.*, 20 Mich. 95, the board of supervisors, by resolution, purported to discontinue a certain portion of a State road. The case came into this court by *certiorari* at the instance of the plaintiffs to review that action. Plaintiffs did not claim to own any land along that part of the road thus discontinued, but claimed to own property on the line of the road, and that, having occasion to travel it almost daily, the discontinuance of this portion deprived them of a direct road to Lansing; that the discontinuance worked a great hardship and inconvenience, imposing unnecessary travel on all persons using the road; and that it materially depreciated the value of the plaintiffs' property. It was said by this court:

'' The parties who seek to reverse the action of the board are not the owners of the land through which the discontinued portion of the road passes. They show no rights affected but such as are common to all other owners of property anywhere along the line of those portions of the road not discontinued, if, in fact, they show anything more than the mere right of travel common to all the people of the State. The whole burden of their complaint is that they are deprived of a direct road to the city of Lansing, and, as far as we can judge from the case, will be compelled to travel from a quarter to half a mile farther in going to and returning from that place. They complain of this, it is true, as depreciating the value of their property. But this, if there be any such damage, being a mere incident arising from the interference with the general public right of travel common to all the people of this State, can hardly be looked upon as a vested right of property which it would not be competent for the legislature to take without compensation; and, if they are entitled to compensation, the fourth section of the original act and the twenty-eighth section of the act of 1851 make full provision for obtaining it.''

See *Buhl* v. *Union Depot Co.*, 98 Mich. 596.

The question is not before us in the present case whether the complainants have a right of action against the railroad company for the recovery of the subscriptions to aid in building the road. The only question is whether the complainants, as private parties, may maintain this bill to restrain the defendant company from changing its line of road, and discontinuing that portion through the city. It is evident that, under our statutes, no such bill can be maintained by a private party. The action is one to inquire into the right of the defendant company to carry on its business, and necessarily to inquire by what right the defendant exercises its franchises. Such inquiry can be made only by the proper officers of the State.

But, if a private party could maintain such a bill, no such showing is made in this case as entitles the complainants to maintain the present bill. The injury complained of is common to all the citizens of St. Louis, and the case falls directly within the ruling of the cases cited.

We do not see how an amendment to the bill would aid the complainants.

The order of the court below dismissing the bill must be affirmed, but without prejudice to the complainants' pursuing any other remedy they may have. Defendant will recover costs of both courts.

The other Justices concurred.

### ON APPLICATION FOR REHEARING.

PER CURIAM. Motion is made for a rehearing in this case, and counsel now claim that the case should be treated as though the attorney general were a party. We have re-examined the case, and are satisfied that the result reached, as the record now stands, is the correct result. The record does not show that the attorney general was ever consulted about the case, or was ever asked to permit the bill to be filed in his name, or ever authorized the proceedings to be so commenced. Since the hearing, no effort appears to have been made to cause the attorney general to intervene. The motion for a rehearing must therefore be denied.